UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

SHAYLYN CAROL POWERS,                }
                                     }
    Plaintiff,                       }
                                     }
v.                                   }     Case No.: 5:19-CV-00262-RDP
                                     }
ANDREW SAUL, COMMISSIONER            }
OF SOCIAL SECURITY,                  }
                                     }
    Defendant.                       }

## MEMORANDUM OF DECISION

Shaylyn Carol Powers ("Plaintiff ") brings this action pursuant to Title XVI of Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for Supplemental Security Income ("SSI"). *See also* 42 U.S.C. § 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

On February 1, 2016, Plaintiff filed her application for SSI in which she alleged that disability began on March 3, 2010. (Tr. 204, 260). On March 29, 2016, Plaintiff's application was initially denied by the Social Security Administration. (Tr. 205). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and on February 20, 2018, a hearing was held before ALJ Gloria W. Green in Florence, Alabama, with vocational expert Rachel McDaniel in attendance. (Tr. 175–193, 214). In the ALJ's decision dated June 22, 2018, she determined that Plaintiff was not disabled within the meaning of § 1614(a)(3)(A) of the Act since

February 1, 2016, the date Plaintiff filed her application. (Tr. 10–17). On December 20, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1–6, 258). Accordingly, that decision became the final decision of the Commissioner, and therefore a suitable subject of this court's appellate review.

Plaintiff was twenty years old at the time she filed her SSI application and twenty-two years old when the ALJ rendered her decision. (Tr. 16–17). She has a high school education and no past relevant work. (Tr. 281). Plaintiff alleges that her disability began on March 3, 2010, following a motor vehicle accident and subsequent surgery that led to hip pain and spine issues. (Tr. 14, 194). Plaintiff also suffers from morbid obesity. (Tr. 14).

On March 7, 2010, at the age of 14, Plaintiff was involved in a motor vehicle accident and underwent orthopedic surgery by Dr. Michael Miller, two days later, in which a metal plate was placed in her right hip to stabilize her sacroiliac joint. (Tr. 339). Plaintiff reported difficulty bending and standing due to the metal plate and was diagnosed in 2011 with a history of chronic pain syndrome. (Tr. 517). Plaintiff had a series of follow-up appointments after the accident and her subsequent surgery, ranging from March 22, 2010 to September 9, 2012. (Tr. 324–31). During an appointment on August 31, 2010, Plaintiff first complained of pain in her SI joint. (Tr. 327–21). She had four other appointments at The Orthopedic Center in Huntsville, but in those other doctor visits she did not describe feeling any pain. In Plaintiff's first post-surgery follow-up, Dr. Miller noted that "[g]iven [Plaintiff's] young age[,] I would expect her to heal this up very rapidly, and I doubt that she is going to be symptomatic from it[,] but we will have to wait and see how she does when she starts weight bearing." (Tr. 331). By the time of Plaintiff's May 17, 2010 appointment, she was beginning to bear weight again fully, and, according to Dr. Miller's notes, she reported very little pain and a readiness to start physical therapy. (Tr. 329–

330).  On June 28, 2010, about three and a half months after her surgery, Dr. Miller noted that Plaintiff was "walking with a normal gait, has very little pain, and seems to have returned to pretty good function."  (Tr. 328).

On August 31, 2010, Plaintiff arrived at her appointment complaining of pain for the first time, stating that her joint "locks up."  (Tr. 327).  After performing and examining a number of X-Rays revealing that there were no major changes in either the fixation or the SI joint itself, Dr. Miller stated, "I am not sure what [Plaintiff's] pain relates to unless there is some arthritis in the SI joint."  (Tr. 237).  At Plaintiff's next appointment on September 28, 2010, she still reported continuing pain; however, the CT scans showed excellent positioning of both the SI joint and implants, both of which had never failed or loosened.  (Tr. 326).  Dr. Miller insisted that Plaintiff return to school, which she had frequently been missing.  (Tr. 326).

On January 21, 2011, Plaintiff returned to The Orthopedic Center, claiming that she fell while getting off the school bus and was now suffering from pain in her posterior.  (Tr. 325). Several X-Rays were taken but were normal, showing healing from the initial surgery and no loosening or breakage; Dr. Miller noted that he had spoken with Plaintiff and her mother about how it was not unusual to have lasting pain after a major pelvic disruption, but he also stated that "[Plaintiff] is very young, only 15 years old, and needs to basically forget that she ever had this injury and get on with her life."  (Tr. 325).  Dr. Miller also noted that Plaintiff had no motivation to get back to full activities and that she had not done much physical activity even before her accident, judging by her morbid obesity.  (*Id.*).

During Plaintiff's final appointment with him, on September 9, 2012, Dr. Miller noted that even though she had reported episodes of pain and discomfort on the right side of the pelvis, it was not a striking problem and did not seem to limit her mobility.  (Tr. 324).  Dr. Miller stated

3

that Plaintiff's bigger issue was her morbid obesity and lack of interest in exercising (*Id.*).

From February 3, 2014 through June 27, 2015, Plaintiff sought treatment from Dr. Morris Scherlis at Tennessee Valley Pain Consultants in Huntsville, Alabama. (Tr. 450–507). In an assessment dated January 6, 2015, Plaintiff retained nearly 5/5 strength upon examination in all areas. (Tr. 15, 478–79). Dr. Scherlis further noted on January 8 that Plaintiff "has pain provoked with climbing an 8-inch step 9 times [but] once provoked the pain is quickly resolved with rest." (Tr. 470). Dr. Scherlis placed Plaintiff on a home exercise program and acknowledged that (1) she was previously discharged from physical therapy for client non-compliance, and (2) she did not want to begin physical therapy because of the high deductible. (*Id.*).

The relevant period for Plaintiff's SSI application is the month in which she filed her SSI application (February 2016) through the date of the ALJ's decision (June 22, 2018). (Tr. 7, 260). *See* 20 C.F.R. §§ 416.330, 416.335; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). On March 16, 2016, Plaintiff complained of an earache during her first medical appointment within that period. (Tr. 517). At that time, Plaintiff did not appear to be in apparent distress and was well developed and well nourished; she was diagnosed with an earache and chronic pain syndrome. (*Id.*). Plaintiff was prescribed medication for her earache and was encouraged to return to her previous providers for further evaluation of her complaints of chronic pain. (Tr. 518–19). Later that same month, Plaintiff visited consultative examiner Dr. John Lary, complaining of right hip pain. (Tr. 520–21). Again, Plaintiff was not in acute distress, appeared well-developed and well-oriented, and behaved normally. (Tr. 522–23). She was able to walk normally, heel and toe walk with some difficulty, move in and out of a semi-squat position, and kneel with difficulty (due to her obesity). She was able to balance with her eyes closed without

any assistance, and she had normal muscle strength in all muscle groups, normal reflexes, and a normal range of motion in her arms and legs. (Tr. 523). Plaintiff reported that she does not use any assistive devices and is able to dress and bathe herself. (Tr. 521). She underwent a pelvic X-Ray that came back normal and with no acute abnormality. (Tr. 525). Dr. Lary noted "[Plaintiff's] ability to sit, stand, walk, lift, carry, bend, squat, and kneel is impaired by morbid obesity and old pelvis injury. Her ability to reach, see, hear, speak, understand, and manipulate small objects is unimpaired." (*Id.*).

During the hearing held on February 20, 2018, Plaintiff testified regarding the pain in her back and right leg following her motor vehicle accident. (Tr. 179–81). Plaintiff stated that the pain in both areas "goes away sometimes," but that she takes up to two over-the-counter medications (such as ibuprofen or Tylenol) for pain each day. (Tr. 181–82, 187). She also testified that her doctors would not prescribe her any medication for the pain in her back and right leg. (Tr. 182). Plaintiff further stated that she had no issues regarding personal care, such as washing her hair and dressing herself, but she could not raise her hands above shoulder length and had issues going up stairs. (Tr. 184–86). She claimed that she was limited to lifting five pounds or less; however, that instruction was given in 2010 following her motor vehicle accident, and there were no current lifting restrictions in place. (Tr. 188). Plaintiff also stated that she would experience pain after an hour, no matter whether she was standing, sitting in a standard office chair, or walking. (Tr. 184–85). She asserted that she "watched kids every now and then for people," although it was difficult for her to pick them up and carry them around. (Tr. 188).

The ALJ asked the vocational expert ("VE") Rachel McDaniel, if a hypothetical individual of the same age, educational background, and same work history as Plaintiff, with the

same RFC, including the "need for a sit/stand option hourly for a few minutes while continuing to work," could perform other jobs. (Tr. 189–90). The VE testified that the hypothetical individual could work as a cashier, inspector and hand packager, or as a small products assembler, but at a reduced number of hours to allow for sitting and standing. (Tr. 190). The ALJ further asked the VE what jobs that same hypothetical individual could attain if her exertional level was sedentary, if she could lift and carry ten pounds frequently, and if she could stand and walk for two hours, but needed to sit for six hours, within an eight-hour workday. (Tr. 191). The VE replied that the hypothetical individual under these circumstances could perform the sedentary jobs of document paper preparer, order clerk, and charge account clerk. (*Id.*). The ALJ then asked whether there were any jobs that allowed the hypothetical individual to take two or three breaks, each of a duration of ten to fifteen minutes, outside of any routine or lunch breaks; the VE replied there was not. (*Id.*). Plaintiff's counsel only question to the VE was if those individuals described in the hypotheticals had more than two days of absence per month, would it affect job prospects. The VE responded, "it would preclude all employment. That would be excessive absentee[ism]." (Tr. 192).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically

determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(g)(1). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1550(c). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the instant case, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the disability application date of February 1, 2016, and that she has a combination of severe impairments that satisfies step two of the disability analysis. (Tr. 12).

Based on the medical evidence presented, the ALJ concluded that Plaintiff has the following impairments: morbid obesity, history of pelvic fracture with open reduction and internal fixation surgery (ORIF), and degenerative disc disease of the lumbar spine. (*Id.*). In step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*). After careful consideration of the entire record, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with the following defining factors: she can lift and carry 20 pounds frequently, stand/walk six hours and sit six hours with a sit/stand option hourly for a few minutes while continuing to work, occasionally push and pull with the right lower extremity; occasionally climb stairs and ramps, balance, kneel, crawl, stoop, or crouch; never reach overhead but can reach to shoulder height without limitation; occasionally bend/twist at the waist; cannot work at unprotected heights or climb ladders. (Tr. 13).

The ALJ concluded that, based on Plaintiff's age, education, and RFC, as well as the VE's testimony, Plaintiff could perform other jobs existing in significant numbers in the national economy. (Tr. 17, 189–91). Thus, the ALJ ruled that Plaintiff is not disabled as that term is defined in the Act and that she was not entitled to a period of disability through the date of the decision. (Tr. 17).

### III.  Plaintiff's Argument for Remand or Reversal

Plaintiff asks to have the ALJ's decision, which is the final decision of the Commissioner following the Appeals Council's denial of review, reversed and remanded. Plaintiff contends that the ALJ's decision is not supported by substantial evidence. Specifically, Plaintiff argues that "the ALJ erred by formulating [Plaintiff]'s RFC in contradiction to the ALJ's own findings."

## IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V. Discussion

Plaintiff contends that the ALJ failed to address her own findings when formulating the RFC. However, Plaintiff has misconstrued the ALJ's findings. Those findings, and the ALJ's RFC determination, are supported by substantial evidence.

### A.     The ALJ's RFC Determination is Not Inconsistent with Her Findings

The ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b).  Plaintiff argues that the ALJ committed reversible error with respect to the sit/stand limitation in the RFC assessment and in finding that Plaintiff could work, despite the VE's testimony to the contrary.[1]  Plaintiff further contends that the ALJ contradicted herself by simultaneously finding that she was able "to perform work at a light exertional level with the given limitations, including the limitation to allow her to sit/stand for a few minutes every hour *to rest*."  (Tr. 16) (emphasis added).  However, Plaintiff's argument is misplaced because, in context, it is clear that the ALJ contemplated that this period of "rest" would involve a continuation of work, as evidenced by the inclusion of Plaintiff's strict limitations in the RFC determination.

Plaintiff's RFC is the most that she can do despite her limitations, and it is based solely on the relevant evidence of record, including all relevant medical history, medically determinable impairments, the effects of treatment, daily activities, medical opinions, and any medical source statements.  20 C.F.R. § 416.945; SSR 96-8p, 1996 WL 374184, at * 5 (1996).

### 1.     The Vocational Expert's Answers to Hypotheticals are Consistent with the ALJ Finding's

Plaintiff argues that the VE's answer to the ALJ's final hypothetical directly contradicts the ALJ's findings during the RFC determination.  The court disagrees.

Plaintiff asserts that the ALJ's RFC determination directly conflicts with the VE's response to the third and final hypothetical question.  The ALJ asked whether any jobs were

---

[1] Plaintiff submits that the ALJ gave only limited weight to the opinion evidence of Dr. John Lary, the consultative examiner who opined that Plaintiff's ability to sit/stand was impaired; however, Plaintiff did not challenge this claim and therefore waives it.  Any issue not specifically raised by and elaborated upon by Plaintiff, including the ALJ's weighing of the medical opinions, is waived.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when [she] either only makes a passing reference to it or raises it in a perfunctory manner without supporting arguments and authority.").

available that were suitable for a hypothetical individual who needed two to three additional ten- or fifteen-minute breaks, outside of any routine breaks and lunch, to which the VE replied, "[n]o." But, in the RFC determination, the ALJ found that Plaintiff needed only a few minutes every hour to move positions to alleviate her hip pain. Plaintiff contends the ALJ's determination contradicts the VE's opinion. But that argument is off the mark.

Substantial evidence does not support the assertion that Plaintiff would require hourly breaks of ten or fifteen minutes in duration, during which she would be completely off task. So, the VE's response to the ALJ's third hypothetical was not applicable or relevant to the RFC determination because the medical evidence does not suggest that Plaintiff requires any more accommodation than what was found by the ALJ in reaching the RFC determination. Of course, to the extent Plaintiff's counsel wished to clarify this point with the VE, counsel could have done so in the hearing when the ALJ gave Plaintiff the opportunity to ask further questions. Plaintiff has failed to establish any error regarding the ALJ's RFC determination. Therefore, the ALJ's findings are due to be affirmed.

      **2.**      **Substantial Evidence Supports the ALJ's Findings**

Despite the fact that most of Plaintiff's medical records are immaterial to the question of disability, the ALJ considered the entirety of her medical history following her motor vehicle accident. After extensive consideration of this medical history, the ALJ determined that Plaintiff could engage in a light range of work with additional limitations, including "a sit/stand option hourly for a few minutes while continuing to work." (Tr. 13). This finding is supported by substantial evidence. The ALJ did not err in assessing how Plaintiff's obesity, history of pelvic ORIF surgery, and degenerative disc disease affect her ability to work due to pain associated with sitting or standing for long periods of time.

Plaintiff argues that the ALJ's statement should be interpreted as the ALJ acknowledging that there should be more limitations outside of those already listed in the RFC determination, including the need to stop working completely a few minutes every hour. However, this argument misses the target. The ALJ was careful to specify that she was assessing "a sit/stand option hourly for a few minutes while *continuing to work*." (Tr. 13) (emphasis added). The phrase "continuing to work" was also used by the ALJ in her hypotheticals to the VE. Nowhere in the trial record, however, did the ALJ suggest or find that the phrase "to rest" meant to cease work completely during the sit/stand break, and therefore, she did not contradict herself in any way. The hearing transcript and the ALJ's findings in her RFC determination show that the only limitation Plaintiff has is the need to shift positions while working to relieve her hip and back pain. Taking a moment to shift one's position does not require a cessation of work. Therefore, the ALJ's RFC determination stating that Plaintiff can continue to work during her breaks is supported by substantial evidence and was not error.

Plaintiff states that she must rest and recover frequently to alleviate her pain, but she has not pointed to any evidence which establishes that she requires complete breaks from working every hour due to her hip or back pain. *See Robinson v. Acting Comm'r of Soc. Sec.*, 766 F. App'x 811, 816 (11th Cir. 2019) (declining to find an "internal inconsistency" in the ALJ's statements regarding subjective complaints of Plaintiff's mental limitations, noting that, "Robinson has identified no evidence showing that she experienced more severe mental imitation than the limitations identified by the ALJ."). Plaintiff argues that her medical records from Dr. Morris Scherlis and Dr. John Lary provide evidence for this assertion. That simply is not so.

Dr. Scherlis's findings were consistent with the ALJ's findings during the RFC determination. The medical evidence (or, more precisely, the lack of a medical record since

2016) substantiates the ALJ's finding that Plaintiff could perform light work, limited climbing, occasional pushing/pulling, and a sit/stand option.

The ALJ discounted the opinion of Dr. Lary because it was too broad and vague, and lacked specification and detail. *See* 20 C.F.R. § 416.927(c)(3) ("We will always give good reason in our notice of determination or decision for the weight we give your treating source's medical opinion."). Plaintiff did not challenge the fact that the ALJ gave little weight to Dr. Lary's opinion and, in any event, the ALJ did not err in giving less weight to those opinions. Moreover, even if the ALJ had given more weight to Dr. Lary's medical opinions, they still do not undermine the ALJ's findings. Therefore, the ALJ's findings as to Plaintiff's limitations are supported by substantial evidence.

Finally, the ALJ did not err in concluding that Plaintiff did not meet her burden of demonstrating that she was disabled under the Act. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 416.912(a), 416.912(c); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("It is well established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, [Plaintiff] bears the burden of proving that [s]he is disabled, and, consequently, [s]he is responsible for producing evidence in support of [her] claim."). The ALJ properly considered all the relevant evidence and performed her duty as the trier of fact in resolving any conflicts in the evidence. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The court concludes that the ALJ's RFC determination that Plaintiff can perform light work with added limitations is supported by substantial evidence. Therefore, Plaintiff is not entitled to SSI and the ALJ's decision is due to be affirmed.

**VI.   Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is

supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate Order in accordance with this Memorandum of Decision will be entered.

    **DONE** and **ORDERED** this July 7, 2020.

                                              **R. DAVID PROCTOR**
                                              UNITED STATES DISTRICT JUDGE